IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN DOE 1, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:25cv300 (AJT/LRV) |
| ) | |
| UNITED STATES OFFICE OF THE ) | |
| DIRECTOR OF NATIONAL ) | |
| INTELLIGENCE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER[1]**

Pursuant to this Court's February 24, 2025 request for supplemental briefing, Defendants respectfully submit this supplemental memorandum of law in opposition to Plaintiffs' motion for a temporary restraining order.

**INTRODUCTION**

At the hearing on February 24, 2025, this Court requested that the parties submit supplemental briefing on three issues. This Court asked two questions about the proper construction of Central Intelligence Agency ("CIA") Agency Regulation 4-16: (a) whether Plaintiffs were entitled, based on the termination decision of the Director of the CIA ("D/CIA"), to seek potential reassignment to another position at the agency; and (b) whether Plaintiffs were entitled to notice an administrative appeal of the D/CIA's termination decision. This Court also

---

[1] As Defendants noted in their initial opposition memorandum, *TRO Opp.* (Dkt. No. 14), at 11 n.8, and Plaintiffs ostensibly agree, *Hr'g Trans.* (Dkt. No. 19), at 11, because Defendants have had a fair opportunity to respond, this Court should treat Plaintiffs' motion as one for a preliminary injunction as opposed to one for a temporary restraining order.

1

asked whether, pursuant to the Fifth Amendment's Due Process Clause, it could enforce the provisions of Agency Regulation 4-16 against the CIA.

Each of these questions is properly answered in the negative. As the D/CIA *himself* has now confirmed in the attached declaration (Exhibit 1), based on his understanding of the OPM memorandum on this subject, "it was my intent then, and remains my intent now, that" the termination decisions at issue here "should be effected under . . . Section II.D of Agency Regulation 4-16." To be sure, the D/CIA – in an attempt to soften the effect of this decision – allowed impacted employees to avail themselves of the Deferred Resignation Program. Additionally, the D/CIA ensured that any actual termination not be effective until the passage of ninety (90) days. But the D/CIA's invocation of Section II.D of Agency Regulation 4-16 means that impacted employees were not entitled to "any [of the] procedural steps set forth in th[e] regulation or elsewhere," including reassignment and administrative appeal. Although this renders moot the question of whether the Due Process Clause provides a vehicle through which an Article III court can enforce the procedural protections of Agency Regulation 4-16 (because the impacted employees are not entitled to such protections), the regulation does not create a property interest in CIA termination procedures upon which a claim under the Due Process Clause could rest.

This Court should deny Plaintiffs' request for a preliminary injunction.

## ARGUMENT

### I.   THE PROPER INTERPRETATION OF AGENCY REGULATION 4-16

#### A.   *Procedures for Excess Employees*

This Court directed the parties to address whether the employees of the now-shuttered CIA DIO who are being separated from the Agency's employ are entitled to the procedures contained within Agency Regulation 4-16 for the termination of "excess personnel," *see* AR 4-16 §§ II.B.9,

II.C.4, including the ability to seek reassignment within the Agency. As the attached declaration of D/CIA John L. Ratcliffe explains, the combination of the Executive Order mandating the closure of all agency DEIA offices, along with the OPM Memorandum requiring that federal agencies execute a reduction in force with respect to such employees by defining the "competitive area" – the universe of jobs for which these employees could compete – "solely in terms of" the now-closed DEIA offices, meant that agencies were to terminate these employees without allowing them to seek other positions within the agency. Exhibit 1, Declaration of Director John L. Ratcliffe ¶ 3. But of import to this Court's question about the proper construction of the regulation, that meant that "to best effectuate the directives" in the Executive Order and the OPM Memorandum as applied to CIA employment, Director Ratcliffe deemed it necessary to exercise his authority under AR 4-16 Section II.D to terminate employees working in the DIO without procedures – including the ability to seek reassignment. *Id.* ¶¶ 4, 5.

As Section II.D makes clear, the termination of any employee under that section is "without regard to any procedural steps set forth in this regulation or elsewhere," and is "[n]ot constricted, limited, affected, or otherwise controlled by any of the procedures set forth in this regulation." AR 4-16, § II. D. In short, because the D/CIA invoked his authority under Section II.D, the procedures found elsewhere in the regulation, including those pertaining to employees terminated as excess personnel, do not apply here.

      B.    *<u>Appeal Rights</u>*

Next, this Court directed the parties to supplement their briefing regarding whether Plaintiffs have administrative appeal rights with respect to the D/CIA's termination decision. Hr'g Tr. (Dkt. No. 19) at 32. Under Agency Regulation 4-16, they do not. *See* AR 4-16 (Dkt. No. 14-1). The regulation certainly does set out an administrative appeal procedure for certain terminated

employees to use. However, as explained in the D/CIA's attached declaration, the D/CIA made the decision to terminate impacted former DIO employees pursuant to his authority under Section II.D of Agency Regulation 4-16. That section of the regulation unequivocally provides that "any employee may be terminated from the Agency at any time without regard to *any* procedural steps set forth in this regulation or elsewhere when the D/CIA, in his discretion, deems it necessary or advisable in the interest of the United States." *See* AR 4-16 (Dkt. No. 14-1) § II.D (emphasis added). The regulation also makes clear that the exercise of this discretionary authority is both "not constricted, limited, affected, or otherwise controlled by any of the procedures set forth in this regulation," and that it is "[i]n abrogation of the existence of any interests or privileges of any employee in his or her employment which might otherwise be created or established by this regulation . . . ." *Id.* § II.D(1)-(2).

In short, the regulation provides that termination pursuant to Section II.D, the regulation on which the D/CIA relied here, does not come with "any procedural steps" that are otherwise provided in AR 4-16, which would include any ability to appeal the termination decision.

II. **AGENCY REGULATION 4-16 DOES NOT CREATE A CONSTITUTIONAL PROPERTY INTEREST**

The Court also asked the parties to address "whether as a matter of due process the Court can enforce the agency's regulations under the Fifth Amendment." Hr'g Tr. (Dkt. No. 19) at 32. In short, it cannot, because any claim based on the regulations themselves fails at the threshold step of the analysis, that is, the regulations simply do not establish a cognizable interest on which a due process claim can be based.

At the threshold of any due process claim, a plaintiff must first establish that "he had a property or liberty interest at stake." *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002); *see also, e.g.*, *Mills v. Holmes*, 95 F. Supp. 3d 924, 931 (E.D. Va. 2015) ("If no life, liberty, or property

4

interest within the meaning of the Constitution is in issue, then there can be no deprivation of constitutional due process."). A statute "must confer more than a mere expectation (even one supported by consistent government practice) of a benefit" in order to create a vested liberty or property interest. *Smith*, 295 F.3d at 429. There instead must be "an *entitlement* to the benefit as directed by statute, and the statute must "'act to limit meaningfully the discretion of the decision-makers.'" *Id.* (quoting *Mallete v. Arlington Cnty. Employees' Supp. Ret. Sys. II*, 91 F.3d 630. 635 (4th Cir. 1996)) (emphasis in original). "Discretionary statutory 'rights' do not create liberty or property interests protected by the Due Process Clause." *Id.* (citing *Appiah v. INS*, 202 F.3d 704, 709 (4th Cir. 2000)).

Where a statute confers discretion on a federal agency to discharge personnel, there is no property interest in continued employment. *See Guerra v. Scruggs*, 942 F.2d 270, 278 (4th Cir. 1991). Regulations and rules only establish liberty or property interests "to the extent they prescribe substantive rules of decision: the regulation must create 'substantive predicates' to guide the decisionmaker's discretion, such as 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'" *Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993) (quoting *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 462-63 (1989)).

The statutory and regulatory provisions governing termination of CIA employment could not be *further* from this standard. Indeed, in *Doe v. Gates,* the D.C. Circuit rejected the plaintiff's due process claim because the National Security Act "exhibits . . . extraordinary deference to the" D/CIA and expressly confers upon the Director the discretion to terminate the employment of any officer or employee "whenever he shall deem such termination necessary or advisable in the interests of the United States." 981 F.2d 1316, 1320 (D.C. Cir. 1993). Accordingly, the court

5

held, there is no property right to continued employment at the CIA. *Id.* at 1321. In reaching this conclusion, the Court explained that nothing in CIA's regulations and policies contradicted the statutory grant of discretion to the Director." *Id.* at 1320; *see also Doe v. Casey,* 796 F.2d 1508, 1519–20 (D.C. Cir. 1986) ("We cannot imagine how the CIA could have more plainly expressed its intent to protect the discretion granted it by section 102(c)."), *aff'd in part, rev'd in part,* 486 U.S. 592 (1988).

And in turn, AR 4-16 *repeatedly* reinforces that it is not constraining the D/CIA's broad discretion to terminate employees pursuant to his authority under the National Security Act. *See* AR 4-16 (Dkt. No. 14-1) § II.D. The regulation states that the D/CIA's termination authority is "[n]ot constricted, limited, affected, or otherwise controlled by any of the procedures set forth in this regulation or any other" and "[i]n abrogation of the existence of any interests or privileges of any employee in his or her employment which might otherwise be created or established by this regulation or any other." *Id.*

Not only does the regulation make clear that it does not constrain the termination authority of the D/CIA, it also makes plain that "neither this nor any other Agency regulation or policy statement creates or confers any substantive or procedural right, benefit, or privilege enforceable by any party against the Agency . . . ." *Id.* ¶ II.F. In other words, the regulation disclaims any cognizable interest Plaintiffs might seek to claim in the enforcement of AR 4-16's provisions (to the extent, of course, that Plaintiffs could show in the first instance that the regulation had not been followed). Because "no substantial limits exist [within the regulation] that constrain" the D/CIA's authority under the National Security Act and AR 4-16 Section II.D, Plaintiffs fail to state a claim for a property interest in having AR 4-16 enforced. *Foggy Bottom Ass'n v. D.C. Off. of Plan.*, 441 F. Supp. 2d 84, 90 (D.D.C. 2006)

## CONCLUSION

The Court should deny Plaintiffs' motion for emergency injunctive relief.

Dated: February 26, 2025                              Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

/s/
DENNIS C. BARGHAAN, JR.
Chief, Civil Division
REBECCA S. LEVENSON
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:   (703) 299-3891/3760
Fax:   (703) 299-3983
Email: dennis.barghaan@usdoj.gov
Rebecca.s.levenson@usdoj.gov
*Attorneys for Defendants*