1

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
 2                     ALEXANDRIA DIVISION

 3   JOHN DOE 1, et al.,          )  Case 1:25-cv-300
                                  )
 4              Plaintiffs,       )
                                  )
 5        v.                      )  Alexandria, Virginia
                                  )  March 31, 2025
 6   OFFICE OF THE DIRECTOR OF    )  2:00 p.m.
     NATIONAL INTELLIGENCE,       )
 7   et al.,                      )
                                  )
 8              Defendants.       )
     _____ )  Pages 1 - 29
 9

10     TRANSCRIPT OF PLAINTIFFS' MOTION FOR A PRELIMINARY

11                      INJUNCTION ORDER

12          BEFORE THE HONORABLE ANTHONY J. TRENGA

13            UNITED STATES DISTRICT COURT JUDGE

14
     APPEARANCES:
15
     FOR THE PLAINTIFF:
16
          KEVIN T. CARROLL, ESQUIRE
17        KIA RAHNAMA, ESQUIRE
          FLUET & ASSOCIATES, PLLC
18        1751 Pinnacle Drive, Suite 1000
          Tysons Corner, Virginia  22102
19        (703) 590-1234

20   FOR DEFENDANTS:

21        DENNIS C. BARGHAAN, JR., ESQUIRE
          REBECCA S. LEVENSON, ESQUIRE
22        OFFICE OF THE UNITED STATES ATTORNEY
          2100 Jamieson Avenue
23        Alexandria, Virginia  22314
          (703) 299-3700

24

25     COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

2

1                    P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  Civil Action

3    No. 1:25-cv-300, *Doe 1, et al. v. Office of the*

4    *Director of National Intelligence, et al.*

5              Counsel, will you please note your

6    appearances for the record.

7              MR. CARROLL:  Kevin Carroll and Kia Rahnama

8    from the Fluet Law Firm for 19 U.S. intelligence

9    officers, Your Honor.

10             THE COURT:  All right.  Welcome.

11             MR. BARGHAAN:  Good afternoon, Your Honor.

12   Assistant United States Attorney Dennis Barghaan on

13   behalf of the defendants.  And with me again today is

14   Rebecca Levenson, also an Assistant United States

15   Attorney.  Once again, I'll argue the cause on behalf

16   of the government today.

17             THE COURT:  All right.  We're here on the

18   plaintiffs' renewed motion for a preliminary

19   injunction, which I've reviewed together with the

20   opposition brief.  I'd be pleased to hear further from

21   counsel.

22             Mr. Carroll, I know you haven't had a chance

23   to file a reply.  So if you would, take this

24   opportunity to say anything you'd like in response.

25             MR. CARROLL:  Thank you very much, Your

1  Honor.

2       As for a reply, we would disagree with the

3  government and say that this is not an ordinary

4  employment law case.  This is a case with important

5  civil rights and civil liberties with implications

6  nationally.

7       Your Honor, we're here today, again, contrary

8  to the defendants' position, we think two important

9  things have happened in the last month:

10      One, the director of Central Intelligence,

11 Ratcliffe, has decided not to grant any right of appeal

12 to the plaintiffs despite what we understood to be the

13 Court's instruction that that take place in good faith.

14      And, two, that the imminent and irreparable

15 harm has grown worse.  Over 30 employers at this point

16 have engaged with the plaintiffs about possible onward

17 employment.  All have asked the obvious question:  Have

18 you ever been discharged from a job before?  If so,

19 why?  What are the legal implications of being fired

20 under an executive order from the President of the

21 United States?

22      The question is almost impossible to answer.

23 My law firm is separately being approached by defense

24 contractors for the answers to those questions.  And

25 because it is a *de novo* sort of situation, we really

1  don't know.  We can give advice, but we can't say

2  exactly what the employment obligations are of the

3  employer.

4           And in addition, again, contrary to what

5  defendants state, the issue here is not what Director

6  Ratcliffe or Director Gabbard may say pursuant to the

7  termination; the defendants -- plaintiffs, rather, have

8  all been defamed by a shotgun blast of statements by

9  the President of the United States and the White House

10 generally about how they were engaged in illegal and

11 immoral activity.

12          And then we see the way that the President of

13 the United States is very aggressively going after law

14 firms, universities, other such organizations in civil

15 society for employing people, even years ago, who might

16 have been legal opponents of his or presumed

17 ideological opponents of his.  It's perfectly

18 understandable why plaintiffs are having difficulty in

19 finding employment using their skills.

20          Your Honor, as you pointed out at the last

21 hearing, Agency Regulation 14-6(E), as in echo, states

22 that in all cases other than contract, reserve, or

23 alien employees who were deemed to be a security risk,

24 there will be a right of review, a right of appeal to

25 the director of Central Intelligence, which has not

1    been granted here despite the request of plaintiffs.

2           I think all sides acknowledged the last time

3    we met that Agency Regulation 14-6 is not the most

4    clearly written regulation in the Code of Federal

5    Regulations.  But here I think the tie should go to the

6    runner.  You know, if there's a provision that says

7    that you get a right of appeal to the DCIA unless

8    you're in one of these narrow categories of people --

9    none of which applies to plaintiffs, who, again, are

10   keeping their security clearances -- that they should

11   receive that right.

12          One of the things that we believed Your Honor

13   was asking to be looked into at the last hearing was

14   whether the individual plaintiffs were properly

15   included in some sort of purge of people involved in

16   DEIA functions.  Leaving aside whether it's

17   constitutional to fire people for their support of the

18   civil rights statutes of the United States, we inquired

19   of each of them.  And the involvement of them with DEIA

20   in those cases was *de minimus*.

21          For example, one of them had spent three

22   months with additional duties related to DEIA.  Another

23   had ten years with CIA and had five months with

24   experiencing related to DEIA.  So it was what, I think,

25   Your Honor may have feared.  These people were having

1  entire careers of difficult and often hazardous service

2  to the United States thrown away because of a temporary

3  assignment for just a few months in carrying out

4  congressionally mandated, specifically congressionally

5  funded programs related to the civil rights laws.

6       And, Your Honor, we continue to believe that

7  the way that Section 3036(e) here is being applied goes

8  beyond what was upheld by the Supreme Court in *Webster*.

9  The government has pointed out a single case --

10  actually, I give them credit for finding it; I couldn't

11  find it in a diligent search -- of an MSPB decision

12  from 1984 in which somebody is let go from the CIA for

13  reasons of poor performance.

14       And the way I read the case this morning,

15  when it was brought to my attention, was that it was

16  holding simply that the MSPB didn't have jurisdiction

17  over firing someone from the CIA, which I think we all

18  agree.

19       The government reason for the additional

20  statement, which I thought was *dicta* -- but for what it

21  is saying, it didn't have to be a national security

22  reason.  Your Honor, the name of the statute for which

23  3036(e) authority is drawn is the National Security Act

24  of 1947, not the Domestic Politics Act of 1947.  No

25  other previous director of Central Intelligence, no

1  other previous director of National Intelligence has

2  thought that they had the power to fire an entire group

3  of officers ever.  Nor has anyone to my knowledge

4  ever -- any of these directors ever thought that they

5  had the authority under the statute to fire someone for

6  ideological or domestic political reasons.

7           And here, the government is asking the Court

8  to embrace a vast expansion of such power by the

9  director of Central Intelligence.

10          Your Honor, I think that this happens in a

11  wider context of, as I said, an assault on civil rights

12  and civil liberties and related institutions in this

13  country.  We have the bar.  We have the courts.  We

14  have universities.  We have other organizations that

15  are under attack.

16          This is the worst possible time to have a

17  politicized foreign intelligence agency that people can

18  just be dismissed, again, because of their belief in

19  the civil rights laws of the United States.

20          THE COURT:  All right.  Thank you.

21          Mr. Barghaan.

22          MR. BARGHAAN:  Thank you, Your Honor.  I'll

23  be very quick, Your Honor.  These issues we've

24  band-aided about quite a bit.  This is our fourth time

25  here before Your Honor on these issues, and I don't

1    want to belabor points that we've made already from

2    podium that I know that Your Honor has already digested

3    and those that we made in our paper this morning.

4           Primarily, the factual picture here hasn't

5    changed all that much since the last time that we were

6    before you.  It is still the case that no one, even if

7    they select the termination option, is being terminated

8    tomorrow.  The plan, the option, allows them to select

9    that option but not until 90 days have passed.

10          It is still the case that the CIA's

11   regulation bars the agency from saying anything

12   substantive about the rationale for the end of the

13   tenure with the agency.  And it is still the case that

14   this Court would have the authority, should my

15   colleague prove an entitlement to relief under their

16   constitutional claims, to authorize or to order

17   equitable relief that would not only reinstate those

18   individuals but provide them with -- make whole relief

19   at that time.

20          Now, the other thing, of course, is, as we

21   mentioned in our papers, is that not all the plaintiffs

22   are similarly situated here.  The director of National

23   Intelligence in her extra regulatory discretion has

24   authorized a process of reconsideration that is still

25   ongoing as to those two individual plaintiffs.

9

1          The one thing that has changed, of course, is
2    the legal landscape, and I don't mean that in the sense
3    of the jurisprudential authority or statutory authority
4    on which we premise our arguments but rather the
5    narrowing of the claims that my colleagues suggest are
6    the basis of their claim for extraordinary equitable
7    relief at this early stage.
8          In that respect, they only seek relief with
9    respect to their Fifth Amendment claims.  We very
10    thoroughly, I hope, addressed those claims in our
11    opposition that we filed this morning.  And I won't go
12    through them in any detail, only to say that my
13    colleague's last comment about *Webster* and 50, United
14    States Code, Section 3036(e) still fails to recognize
15    that that statute does not say that the director can
16    terminate an employee so long as whatever he determines
17    that the employee's continued employment is against the
18    national security interests of the United States.
19          It simply says the interest of the United
20    States.  It does not need to be a national security
21    rationale for the termination using that extraordinary
22    statutory discretion.
23          On the question of reassignment and appeal,
24    we've articulated the bases for our view on why the
25    regulation does not authorize an appeal and the

1   difference between appeal and reconsideration.  I don't

2   need to say much more about that.  I would only add to

3   my colleague's position in that respect that he failed

4   to address a threshold question, which is whether a

5   violation of those regulations is itself a

6   constitutional mandate or a Fifth Amendment claim it

7   would make.

8           And as for the reasons we've stated, there

9   isn't a whole lot of binding authority for the

10  proposition that what is known as the *Accardi* doctrine,

11  that is, that there is a claim -- an individual may

12  make a claim in an Article III court that an agency is

13  not following its own regulations finds its genesis in

14  the Constitution's Fifth Amendment, and that's super

15  important here because as this Court held in its past

16  order, unless it is a Fifth Amendment claim, they have

17  no right to relief.  This Court has no jurisdiction

18  over it.

19          And finally, the question about state bar

20  reputational interests that my colleague raised,

21  there's no authority for the proposition that a former

22  employee's self-publication of the rationale for their

23  termination creates liability in the employer.  The

24  law, we think, is quite clear.  The Fourth Circuit's

25  decision in *Stone*, we think, stands for this

1  proposition, and that is that it is only a termination

2  when the employer also adds a detrimental comment about

3  morality that the Fifth Amendment is implicated.

4          And before I continue to stutter anymore, I

5  will take my leave.  I thank the Court for its time.

6          THE COURT:  All right.  Counsel, I'll give

7  you the last word.

8          MR. CARROLL:  Your Honor, the defamatory

9  statement doesn't have to be re-self-published by the

10  defendants here.  It was on the front page of the *New*

11  *York Times* and *The Washington Post*.  The government

12  can't unring the bell here.  Any lawyer will tell an

13  employer to be very careful about what they say about

14  the termination of an employee.  Instead, here, the

15  President of the United States did precisely what is

16  being discussed here, stated that the plaintiffs were

17  involved in illegal and immoral activity.  And it's a

18  very unique set of facts.  I think it makes it an

19  exceptional case and, as I said, not an ordinary

20  employment law case, Your Honor.

21          THE COURT:  All right.  Thank you.

22          The Court is going to take a brief recess,

23  and I'll return shortly with my ruling.

24          The Court will stand in recess.

25      (Recess from 2:17 p.m. until 2:34 p.m.)

 1            THE COURT:  The Court has had the opportunity
 2    to review the briefing in this case.  It's a
 3    disappointment that we're here again, frankly.  I
 4    thought after the last hearing the Court's views were
 5    fairly clear as far as its hope as far as how things
 6    would progress.
 7            But in any event, the Court is now presented
 8    with the plaintiffs' renewed motion for a preliminary
 9    injunction, which I've reviewed together with the
10    supporting and opposition memoranda and the related
11    exhibits, and with the benefit of counsel here today,
12    the Court is prepared to rule.
13            The plaintiffs seek to, first, order
14    Defendants Ratcliffe and Gabbard to state why each
15    plaintiff's termination serves the national interest;
16    secondly, order defendants to review and reconsider
17    plaintiffs' termination decisions on an individualized
18    basis within a reasonable period of time; third, order
19    defendants to consider each plaintiff for reassignment
20    to open positions in the intelligence community in
21    accordance with their qualifications and skills; and
22    fourth, to enjoin defendants from terminating
23    plaintiffs' employment while those appeals and
24    reassignment actions are pending.
25            These procedural rights plaintiffs assert are

1  established in federal law, federal regulations, and

2  defendants' internal procedures, such that plaintiffs

3  can vindicate their rights under the Fifth Amendment.

4  Separately, plaintiffs request that this Court exercise

5  its authority to enforce the agency's own regulations

6  as a matter of constitutionally mandated procedural due

7  process under *United States ex rel. Accardi v.*

8  *Shaughnessy*, a 1954 Supreme Court decision.

9          Approximately one month ago, on February 27,

10  2025, this case was before the Court on plaintiffs'

11  first motion for a temporary restraining order to

12  enjoin the termination of their employment.  At that

13  time, the Central Intelligence Agency had communicated

14  to plaintiffs that they would be terminated from their

15  current roles, and the Office of the Director of

16  National Intelligence had expressed its intent to do

17  the same.  However, ODNI had not yet determined the

18  procedures it would adopt to effectuate the

19  terminations.

20          Upon consideration of plaintiffs' motion, the

21  Court did not enjoin the anticipated terminations.

22  Nevertheless, the Court expressed the view that the

23  plaintiffs had a right to appeal any decision to

24  terminate their employment, understanding that the CIA

25  director and director of National Intelligence would be

1  the ones to consider any appeal displacing any concerns

2  that the directors' broad discretion would be usurped

3  in some manner.

4          Additionally, the Court expressed the view

5  that plaintiffs had post-decision rights to be

6  considered for reassignment, with that right limited

7  only by the availability of open positions and each

8  plaintiff's qualifications.

9          The Court also concluded that the CIA and

10  ODNI employees are entitled to the same rights and

11  protections under the National Security Act, so that

12  the Court's analysis of the merits and the Court's

13  determination as to the scope of plaintiffs' rights

14  were applicable to all the parties.  Because plaintiffs

15  had not yet filed internal appeals or represented that

16  they were barred from reassignment, neither issue was

17  ripe for further adjudication at that time.

18          In the intervening month, plaintiffs have

19  sought to invoke their rights to appeal and

20  reassignment.  In that regard, on March 18, 2025, the

21  plaintiffs employed by the CIA received notices

22  offering them the three resignation and termination

23  options previously offered to them on February 18.  The

24  notices requires CIA plaintiffs to choose one of three

25  resignation options by 5:00 p.m. today, March 31, 2025,

1  or be terminated.

2          Both the February 18 and March 18 notices

3  omit any reference to plaintiffs' appeal rights.

4  Nevertheless, consistent with the Court's comments at

5  the February 27 hearing, certain CIA plaintiffs

6  requested appeals and to be considered for reassignment

7  within the agency.

8          The CIA e-mailed plaintiffs' counsel on

9  March 17 to assert that in the agency's view the

10 governing regulation does not offer a process to appeal

11 the termination decision within the agency or otherwise

12 seek reassignment within the agency.

13         As for the plaintiffs employed by the ODNI,

14 they first received a termination notice on March 7,

15 2025, that contained the three resignation and

16 termination options previously offered to the CIA

17 plaintiffs in mid-February.  The ODNI notice, however,

18 unlike the CIA notice, expressly recognized plaintiffs'

19 right to an appeal.

20         Accordingly, the ODNI plaintiffs appealed and

21 requested consideration for reassignment on March 18,

22 and defendants acknowledge receipt of the same on

23 March 20.  As of March 27, plaintiffs had not received

24 an appeals decision or an indication that they would be

25 considered for reassignment.  With this change of

1    circumstances since the last hearing, the Court has

2    considered plaintiffs' renewed motion for a preliminary

3    injunction.

4            As the Court had previously stated, in order

5    to obtain a preliminary injunction, a plaintiff must

6    show a likelihood of success on the merits; irreparable

7    harm in absence of injunctive relief; that the balance

8    of equities tip in plaintiff's favor; and that the

9    issuance of a preliminary injunction is in the public

10    interest.

11            As a threshold matter, plaintiffs seek to

12    vindicate their rights under two routes, relying on the

13    Fifth Amendment due process clause and the principle in

14    *Accardi* that agencies must follow their own procedures

15    and policies.

16            Specifically, the Court must consider based

17    on the plaintiffs' current position the likelihood of

18    success on three issues:  First, whether the plaintiffs

19    have a right to receive individualized reasons for

20    termination that must be related to national security;

21    second, whether plaintiffs have a right to be

22    considered for reassignment and the scope of that

23    right; and third, whether plaintiffs have the right to

24    appeal their terminations for reconsideration by their

25    respective directors.

1          With respect to the likelihood of success on

2  the first issue, plaintiffs argue that the Court should

3  obligate Defendants Ratcliffe and Gabbard to state why

4  each individual termination serves the national

5  interest based on their understanding that such a

6  finding is prerequisite for termination.

7          The Court finds that argument fails for two

8  reasons:

9          First, *Webster v. Doe* considered this

10 question and found in allowing termination whenever the

11 director shall deem it necessary or advisable and not

12 simply when the dismissal is necessary or advisable.

13 Section 102(c) fairly exudes deference to the director

14 and forecloses the application of any meaningful

15 judicial standard of review for assessing a termination

16 decision short of permitting cross-examination.

17         Second, CIA Regulation 4-16 states

18 unequivocally that the CIA director need not provide to

19 anyone the reasons for exercising his authority, and a

20 national security basis for the exercise of this

21 authority is not required.

22         The language of that statute, however, is

23 somewhat irrelevant at this point since, in any event,

24 even though the directors need not provide their

25 reasoning for terminating plaintiffs and those reasons

1   do not have to relate to national security, the CIA

2   director has, in fact, stated his reason for the

3   decision to terminate, and the only reason for his

4   decision to terminate these plaintiffs was the

5   elimination of the positions that they were assigned to

6   within the DEI office in implementation of Executive

7   Order 14151 and the January 24, 2025, OPM memorandum.

8   The director of National Intelligence has not offered

9   any other reason for presenting the ODNI plaintiffs

10  with the same three termination options.

11          So the issue before the Court then is whether

12  this expressed reason for the decision to terminate

13  triggers other post-decision rights that are spelled

14  out in the agency's regulations and other federal

15  statutes and regulations that address specifically the

16  rights of employees who are affected by a

17  reduction-in-force termination.

18          The executive order at issue was entitled

19  "Ending Radical and Wasteful Government DEI Programs

20  and Preferencing," and the OPM memorandum was entitled

21  "Guidance Regarding RIFs of DEIA Offices."  The CIA

22  director described those directives as requiring

23  federal agencies to execute a reduction-in-force action

24  with respect to employees who had most recently worked

25  in their respective DEIA offices.  Those reasons

1  clearly establish that the decision to terminate

2  plaintiffs was made to eliminate excess employees

3  pursuant to a reduction-in-force action.

4           This reason plainly falls within

5  Section II(C)(4) of the CIA Regulation 4-16 that

6  defines the rights of such employees, as well as

7  federal statute 5 U.S.C., Section 3502(a) and related

8  Regulation 5 C.F.R., Section 351.402 entitling these

9  employees to consideration for reassignment.  In short,

10 these regulations need to be read and harmonized as a

11 whole.

12          The CIA Regulation 4-16 addresses specific

13 circumstances under which an employee may be terminated

14 and sets out specific rights with respect to a

15 termination under those circumstances.  As a catchall,

16 CIA Regulation 4-16 includes the relied-upon

17 Section II(B)(11), conferring the CIA director with

18 broad discretion as to how such employment terminations

19 may be affected.  As that section states, it is,

20 however, specifically in addition to the regulations

21 pertaining to specific circumstances of termination,

22 one of which is the excess employee situation.  It is

23 not in derogation of or rather than or a nullification

24 or elimination of the other regulations specifically

25 addressing the specific circumstances involved in a

1  decision to terminate an employee.  And the director's

2  stated reason for his decision to terminate plaintiffs

3  placed them squarely within the specific regulation

4  pertaining to employees who become excess employees

5  because of a reduction-in-force action.

6       By its nature, Section II(D), as reflected in

7  the prior circumstances under which it has been invoked

8  by the agency and interpreted by the courts was not

9  intended to address the specific situations addressed

10  in the other parts of the regulations specifically

11  pertaining to the reasons for termination and was

12  clearly never intended to address a mass firing in

13  furtherance of a reduction in force.

14       To interpret Section II(D) as effectively

15  eliminating the operation of the other parts of that

16  regulation specifically violates the principle that

17  laws and regulations are to be read as a whole so that

18  no part becomes superfluous, void, or insignificant.

19       To put a finer point on this, plaintiffs'

20  right to compete for reassignment after the decision

21  has been made to terminate their current position is

22  rooted in at least three sources previously mentioned:

23  Title 5 of the United States Code, Section 3502(a)

24  describing rights and processes for retention of

25  employees in a RIF action; 5 C.F.R., Section 351.402

1  defining competitive areas for employees in a RIF

2  action; and CIA Regulation 4-16 describing the rights

3  and processes for CIA employee terminations.

4          This latter provision provides that

5  plaintiffs may be considered for placement within their

6  career service and agency-wide at the same or different

7  grade for employees with certain qualifications,

8  skills, experience, and training so long as there are

9  available positions.

10          In support of the decision to deny affected

11  plaintiffs their right to reassignment consideration,

12  the CIA director represented in his declaration to the

13  Court that the OPM memorandum required that the

14  competitive area for such a RIF be defined solely in

15  terms of the DEIA office where the employees had

16  worked.

17          As this Court stated at the February 27,

18  2025, hearing, it's difficult to square the director's

19  assertion of his uncabined discretion with the

20  director's assertion that he's bound by the OPM acting

21  director's definition of a competitive area for

22  reassignment purposes.  But in any event, the federal

23  statutes and regulations at issue unequivocally empower

24  the respective agencies, not OPM, to define the

25  competitive area.

1          As mentioned above, 5 C.F.R. 351.402

2    provides, quote, Each agency shall establish

3    competitive areas in which employees compete for

4    retention under this part.

5          Here, the CIA's own regulations have already

6    established the applicable competitive area applicable

7    to an employee's reassignment, namely, placement within

8    their career service and agency-wide at the same or

9    different grade for employees with certain

10   qualifications, skills, experience, and training so

11   long as there are available positions.

12         In fact, CIA Regulation 4-16 provides that an

13   employee may seek elsewhere in the agency at the same

14   or different grade, and in that case, the agency,

15   quote, will broker an agency-wide placement effort.

16         Here, the evidence before the Court is that

17   some of these plaintiffs have already been deemed

18   qualified for reassignment to available and open

19   positions and have received offers for them.

20         Without question, the plaintiffs in this case

21   possess significant national security experience, a

22   vast majority of whom have already been working in the

23   intelligence community for between 10 to 15 years, if

24   not longer.  Some are nearly pension eligible, and as

25   of the filing of the declarations, multiple plaintiffs

1  have received or would have received a job offer for a

2  non-DEIA role if they were not placed on administrative

3  leave.

4         Critically, some plaintiffs have already

5  interviewed for, accepted, and been in the process of

6  transitioning to new roles when the reassignments were

7  withdrawn.

8         With respect to likelihood of success on the

9  appeal, as for plaintiffs' right to appeal the

10 director's decision to terminate, the Court already

11 expressed its conclusion that such a right exists under

12 a plain reading of the regulations which state that the

13 right of appeal exists in every case of termination

14 except in two instances not applicable here.  The Court

15 recognizes that, unlike the CIA notice, the ODNI notice

16 issued on March 10 provided a procedure for appealing

17 plaintiffs' terminations, and two plaintiffs have

18 pursued that appeal but have not yet received a

19 response.

20        The defendants contend that any violation of

21 these appeal rights cannot be vindicated under the

22 Fifth Amendment -- a violation of any of these rights,

23 both the appeal rights and the rights of reassignment,

24 cannot be vindicated under the Fifth Amendment as a

25 violation of due process because plaintiffs' lack of

1  property interest in continued employment, nor can such

2  rights be addressed under the *Accardi* doctrine, which

3  defendants contend has been relegated to an

4  administrative principle, not a constitutional mandate.

5          With respect to the *Accardi* doctrine, the

6  Fourth Circuit has not yet expressly addressed whether,

7  absent an APA claim, the *Accardi* doctrine is applicable

8  to vindicate constitutional and due process rights.  A

9  brief review of the case law demonstrates that there is

10 a circuit split on the question of whether the *Accardi*

11 doctrine has a constitutional dimension.  The Second,

12 Fifth, Tenth, and Eleventh Circuits have characterized

13 the *Accardi* doctrine as supporting a constitutional due

14 process claim.

15          Indeed, the Fifth Circuit reaffirmed just

16 this last month that an agency's violation of its

17 regulations may support a procedural due process claim.

18          The D.C. Circuit in *Battle v. F.A.A.*, which

19 is a 2005 decision, considered an *Accardi* claim based

20 on the merits where there was no corresponding APA

21 claim.

22          Nor has the Supreme Court squarely addressed

23 that issue.

24          And for their position, defendants rely

25 heavily on a footnote in a 1978 Supreme Court case,

1  *Board of Curators v. Horowitz*.  That is simply little
2  more than *dicta*.

3          After reviewing the relevant jurisprudence,
4  the Court concludes that under the circumstances of
5  this case, given the specific regulations at issue, CIA
6  Regulation 4-16 may be enforced as a matter of
7  constitutionally protected procedural due process.

8          With respect to the element of irreparable
9  harm in the absence of injunctive relief, as for the
10 risk of irreparable harm, it's well established that
11 the deprivation of constitutional rights unquestionably
12 constitutes irreparable injury, with the constitutional
13 rights at issue here being procedural due process
14 rights.

15          Plaintiffs have now also credibly raised the
16 prospect of irreparable harm based on reputational
17 injury given the language of Executive Order 14151,
18 pursuant to which the decision was made to terminate
19 their employment, the characterization of the DEI
20 office in that order, and the effect that
21 characterization would have on the people who held
22 those positions, as well as the experiences now placed
23 in the record of certain employees in their job
24 searches and the general reduction in federal
25 employment opportunities.

1          Moreover, the deprivation of plaintiffs'

2    appeal and reassignment rights once deprived will be

3    difficult to restore or address through non-injunctive

4    remedies given the inherent delays and lost

5    opportunities the deprivation of those rights may

6    cause.  Based on the record before the Court, the Court

7    finds that in the absence of injunctive relief, the

8    plaintiffs will likely suffer irreparable harm.

9          With respect to the balance of equities, the

10   Court also finds that the balance of equities weigh in

11   favor of the plaintiffs and injunctive relief.  Here,

12   the plaintiffs face termination without any suggestion

13   of wrongdoing or poor performance and represent a depth

14   of experience that benefits the agencies in which they

15   worked for years.  As plaintiffs repeatedly emphasize,

16   most of them were only temporarily assigned to DEI

17   roles and would have been transitioned out of those

18   roles after their temporary duty assignment ended.  At

19   bottom, plaintiffs are being penalized for being in the

20   temporary place at the wrong time when E.O. 14151 was

21   issued.

22         Simply requiring the government to follow its

23   own regulations is a minimal burden compared to both

24   the economic and reputational harm that would plague

25   plaintiffs if the procedures at issue are not followed.

1          Likewise, injunctive relief is in the public
2    interest given the wealth of talent and experience
3    these plaintiffs represent and offer in furtherance of
4    the agency's mission to protect the country from
5    foreign and domestic threats.  As the Supreme Court has
6    repeatedly stated, there are few interests that can be
7    more compelling than the nation's need to ensure its
8    own security.

9          As evidenced by the prospects for
10   reassignment already extended to some of these
11   plaintiffs, there appears multiple open and available
12   positions that need filling.  And although it was
13   unclear how many of these positions could be filled by
14   these plaintiffs, the public would certainly benefit
15   from an internal reassignment over hiring new personnel
16   who require significant onboarding and training to fill
17   vital national security roles.

18         So for all of those reasons, it will be the
19   order of this Court that the plaintiffs' renewed motion
20   for a preliminary injunction is granted in part as set
21   forth herein and is otherwise denied.

22         And it is further ordered that the defendants
23   and any of defendants' officers, agents, servants,
24   employees, and attorneys, as well as other persons who
25   are acting in concert with them, be, and the same are

1   hereby enjoined from effectuating or implementing any

2   decision to terminate these plaintiffs without further

3   Court authorization.

4            To the extent that any such decisions to

5   terminate any plaintiff is submitted to the Court for

6   approval, the Court will assess the extent to which any

7   such plaintiff has received the appeal and

8   consideration for reassignment that he or she was

9   entitled to receive as set forth herein, and plaintiffs

10  shall continue to remain on administrative leave with

11  pay and benefits pending further court order.

12           It is further ordered that the defendants

13  provide plaintiffs a requested appeal from any decision

14  to terminate him or her consistent with the steps set

15  forth in CIA Regulation 4-16, including to permit

16  plaintiffs to submit written comments explaining why

17  they should not be terminated, to provide plaintiffs

18  with a written notification of the director's decision

19  and to provide reasonable notice of the status of any

20  pending appeal.

21           It is further ordered that the defendants

22  consider any plaintiff's request for reassignment for

23  open or available positions in accordance with their

24  qualifications and skills, without regard to the

25  definition of a competitive area in the January 24,

1   2025, OPM memorandum and consistent with CIA Regulation

2   4-16, Section II(C)(4), including an agency-wide review

3   of available positions that plaintiffs may be qualified

4   for, notwithstanding any election that a plaintiff may

5   have made in response to the requirement that each

6   plaintiff select whether to retire, resign, or be

7   terminated.

8           It is further ordered pursuant to Federal

9   Rule of Civil Procedure 65 that no bond is required

10  under the circumstances of this case.

11          That will be the ruling of the Court.  The

12  Court will issue a written order as well.

13          Anything further?

14          MR. CARROLL:  No, Your Honor.

15          MR. BARGHAAN:  No, Your Honor.

16          THE COURT:  All right.  Counsel is excused.

17          The Court will stand in recess.

18          -----------------------------------

                    Time:  2:56 p.m.
19

20

21

        I certify that the foregoing is a true and
22
     accurate transcription of my stenographic notes.
23

24
                                    /s/
25                          Rhonda F. Montgomery, CCR, RPR


        Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599